UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARLYN A. BRAITHWAITE,

                **MEMORANDUM & ORDER**

                07-cv-0127 (NGG)(LB)

Plaintiff,

-against-

KINGSBORO PSYCHIATRIC CENTER,
and the NEW YORK STATE OFFICE OF
MENTAL HEALTH,


Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Pro se plaintiff Marlyn A. Braithwaite ("Plaintiff" or "Braithwaite") asserts claims of employment discrimination on the basis of race, national origin, gender, and age under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, against her former employer, Kingsboro Psychiatric Center ("Kingsboro"), and the New York State Office of Mental Health ("OMH") (together, "Defendants"). (See Complaint (Docket Entry #1) 1; Order dated August 30, 2007 (Docket Entry #16) (amending the caption to add OMH as a defendant).)[1] Plaintiff alleges that she suffered unlawful termination, retaliation, and unequal terms and conditions of employment as a result of the Defendants' discrimination. (Compl. ¶ 4.)

Specifically, Plaintiff claims that during her employment at Kingsboro, she applied for shift transfers on two occasions, but was told both times by her "treatment team leader" that

---

[1] OMH is a New York State agency that operates Kingsboro. (Defendants' Rule 56.1 Statement of Material Facts ("Def. 56.1 Stmt.") (Docket Entry #35) I.1.)

1

"they needed a male." (Compl. ¶ 8.) She alleges that she had "more state time than both of the two males" who were ultimately hired for the positions, and that one of the males "only had a month state time." (Id.) Plaintiff further asserts that while working at Kingsboro, she observed "several patients overdosing" who "had no knowledge of what [medications] they were taking," and that she found "undocumented and discontinued medication that was still be[ing] taken by the patients." (Id.) Plaintiff alleges that she brought these issues to the attention of the "nursing department" and her supervisor, but that she was "harassed." (Id.)

Defendants have moved for summary judgment on Plaintiff's Title VII and ADEA claims. (See Defendants' Motion for Summary Judgment ("Def. Mot.") (Docket Entry #29); Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mem.") (Docket Entry #36).) For the reasons set forth below, Defendants' Motion is GRANTED.

I. BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

On April 28, 2005, OMH hired Braithwaite to work at Kingsboro as a Level 9 Mental Health Therapy Aide ("MHTA"). (Def. 56.1 Stmt. ¶¶ I.2, II.4; Declaration of Mahendra Jorawar, Director of Human Resources Management, dated October 2, 2008 ("Jorawar Decl.") (Docket Entry #30) ¶ 3.)[3] Braithwaite identifies herself as a black woman, and her country of

---

[2] While Plaintiff opposes the Defendants' Motion for Summary Judgment, she does not dispute the majority of facts set forth in Defendants' Rule 56.1 Statement. Pursuant to Local Rule 56.2, Defendants provided Plaintiff with notice of the consequences of failing to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, and included copies of those rules. (Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment ("Rule 56.2 Notice") (Docket Entry #34).) Plaintiff did not submit a Rule 56.1 Statement or a response to Defendants' 56.1 Statement. Since Plaintiff is pro se, the court has nonetheless reviewed the record submitted by the parties to determine whether there are disputed issues of material fact. See Melendez v. DeVry Corp., No. 03-CV-1029 (NGG) (LB), 2005 WL 3184277, at *2 (E.D.N.Y. Nov. 29, 2005). The court will deem admitted only those facts in Defendants' Rule 56.1 Statement that are supported by admissible evidence and are not controverted by admissible evidence in the record.

[3] Although Defendants refer to Plaintiff's title as "Mental Hygiene Treatment Aide" at one point in their Rule 56.1 Statement, see Def. 56.1 Stmt. ¶¶ I.2, the underlying evidence demonstrates that the proper title is Mental Health Therapy Aide, see, e.g., Jorawar Decl. ¶ 3.

2

origin as Guyana. (Compl. ¶ 7.) Plaintiff was 45 years old when she began her employment at Kingsboro. (Id. (listing Plaintiff's birthdate as October 21, 1959).)

Plaintiff was hired to work the night shift, from 11:30 p.m. until 8:00 a.m. (Def. 56.1 Stmt. ¶ II.5; Jorawar Decl. ¶ 4; Declaration of Judith Okoli, Mental Health Treatment Team Leader, dated October 3, 2008 ("Okoli Decl.") (Docket Entry #31) ¶ 4; Declaration of Enid Greenidge, Nurse Administrator, dated October 8, 2008 ("Greenidge Decl.") (Docket Entry #32) ¶ 4.) Plaintiff applied for a transfer to different shifts on two separate occasions. (Def. 56.1 Stmt. ¶ II.6.) The first time, Plaintiff requested a transfer to the day shift. (Id.; Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Opp.") (Docket Entry #37) Ex. H (Letter to Jorawar, dated July 6, 2005, requesting transfer to day shift).) That shift was instead given to Justin Ryan, a white male. (Def. 56.1 Stmt. ¶ II.6.) The second time, Plaintiff requested a transfer to the evening shift, but Jimmy Santiago, a Hispanic male, was given the shift. (Id.; Pl. Opp. Ex. I (sign-up sheet showing Plaintiff and Santiago as interested applicants for transfer to the evening shift).)

MHTAs who work on the day, evening, and night shifts have the same duties, responsibilities, job description, benefits, and opportunities for advancement. (Def. 56.1 Stmt. ¶ II.7-8; Jorawar Decl. ¶¶ 5-6 & Exs. A-B.) MHTAs who work the night shift, such as Plaintiff, receive $550 in additional "inconvenience" pay compared to the day and evening shift MHTAs. (Def. 56.1 Stmt. ¶ II.9; Jorawar Decl. ¶ 7.) Therefore, had Plaintiff been granted either of the two shift changes she requested, her pay would have decreased. (Id.)

Shift assignments are governed by the contract between OMH and the Civil Service Employee's Association ("CSEA") union, the New York State Governor's Office of Employee Relations CSEA Institutional Agreement ("CSEA Agreement"). (Def. 56.1 Stmt. ¶ II.10;

Jorawar Decl. ¶ 8 & Ex. C.) The CSEA Agreement states in relevant part that "appointments and promotions to vacant positions in the non-competitive services or assignment of employees to work locations and shift shall be made on the basis of seniority, subject to the operating needs of a department or agency or component thereof, or subject to an identification of differences between employees with respect to relevant factors concerning the employee's ability to perform the required duties and responsibilities satisfactorily." (CSEA Agreement, Section 44.2 (Jorawar Decl. Ex. C.); Def. 56.1 Stmt. ¶ II.10; Jorawar Decl. ¶ 8.) Seniority status is calculated based upon time employed by OMH; employment with other state agencies is not included. (Def. 56.1 Stmt. ¶ II.11; Jorawar Decl. ¶ 9.) At the time of Plaintiff's first transfer request, she had been employed by OMH for just over two months. (See Def. 56.1 Stmt. ¶¶ I.2, II.4; Jorawar Decl. ¶ 3.)

Defendants assert that Plaintiff was not granted the shift transfers that she requested because her work performance was deficient. (Def. 56.1 Stmt. ¶ II.12; Jorawar Decl. ¶ 10; Okoli Decl. ¶ 7.) They claim that Plaintiff demonstrated an inability to take directions from her supervisors, Tracey Spencer-Berry and Enid Greenidge, had difficulty following through on assignments, and had poor working relationships with her peers. (Id.) According to Greenidge, "on more than one occasion" Plaintiff used profanity when given an assignment, and refused the assignment. (Def. 56.1 Stmt. II.13; Greenidge Decl. ¶ 6.) One time, Plaintiff had a loud outburst with a supervisor, Spencer-Berry, in the presence of patients. (Def. 56.1 Stmt. ¶ II.14; Greenidge Decl. ¶ 7.) Greenidge admonished Plaintiff and advised her that such behavior was not acceptable. (Greenidge Decl. ¶ 8.)

Greenidge documented these performance problems in two probationary evaluations, dated July 26, 2005 and October 11, 2005. (Def. 56.1 Stmt. ¶ II.15; Greenidge Decl. ¶¶ 9-10 &

4

Exs. A-B.) Both evaluations were completed by Greenidge, and approved by her supervisor, Judith Okoli. (Greenidge Decl. ¶ 9.) In the July 26, 2005 evaluation, Plaintiff scored below the expected level with respect to patience and self-control, and the ability to work with others. (Def. 56.1 Stmt. ¶ II.16; Greenidge Decl. ¶ 9 & Ex. A.) Plaintiff was instructed to follow the chain of command and not to engage in personal conflicts. (Id.) In her October 11, 2005 evaluation, Plaintiff received the lowest possible scores on patience and self-control, ability to work with others, attitude toward supervisors, cooperation, and ability to accept and incorporate constructive criticism. (Def. 56.1 Stmt. ¶ II.17; Greenidge Decl. 10 & Ex. B.) The evaluation reported that "problems have previously been discussed with employee and she continues to be unable to work effectively on making changes in her work performance." (Id.) Based upon these performance reports, Greenidge, the Nurse Administrator, Judith Okoli, the Mental Health Treatment Team Leader, and Carolyn Wells, the Director of Community Services, acting in consultation with Human Resources, rejected Plaintiff's transfer requests. (Okoli Decl. ¶ 7.)

On October 2, 2005, Plaintiff sent a letter to Jorawar, the Director of Human Resources, challenging her July evaluation and documenting her personal conflicts with Greenidge, and another employee, "Ms. Jones." (Pl. Opp. Ex. C.) The letter did not reflect any concerns about discrimination. (See id.)

On October 26, 2005, Don Holford, the Deputy Director for Administration and Support, notified Braithwaite that her probationary employment at Kingsboro would be terminated, effective that day. (See Pl. Opp. Ex. B.) Holford noted that "[s]everal of the issues you raised concerning program operation in KPC Building 9 are of concern to the facility and will undergo an immediate and thorough followup," but emphasized that her termination was based upon

"significant performance deficits unrelated to the building 9 operational problems you reported in our meeting." (Id.)

In support of her gender discrimination claim, Plaintiff asserts that Okoli, the Treatment Team Leader, told her "they needed a male" for the open positions. (Declaration of Nathan A. Brill dated October 3, 2008 (Docket Entry #33) Ex. B, Deposition of Marlyn Braithwaite dated March 7, 2008 ("Braithwaite Dep.") 55.) Defendants claim that no Kingsboro employee ever told Plaintiff that the open positions to work other shifts needed to be filled by males. (Def. 56.1 Stmt. ¶ II.18.) Okoli attests that she never indicated that the day and evening shifts were only open to male staff, or that there was a need for a male staff member on those shifts. (Okoli Decl. ¶ 6.) Defendants contend that Plaintiff was not denied the shift transfers or terminated because of her sex or any discriminatory reason, and that she was never retaliated against for any possible complaints of discrimination. (Def. 56.1 Stmt. ¶¶ II.19-22; Okoli Decl. ¶ 8.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

For the purposes of summary judgment, a fact is "material" when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Therefore, summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for

the non-moving party." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted).

In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." Anderson, 477 U.S. at 255. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). Further, "in pro se cases, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers,' and should read a pro se party's 'supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest.'" Vanhorne v. New York City Transit Auth., 273 F. Supp. 2d 209, 213 (E.D.N.Y. 2003) (internal citations omitted); accord Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

## III. DISCUSSION

### A. Discrimination Claims under Title VII and the ADEA

To establish a prima facie case of discrimination under either Title VII or the ADEA, a plaintiff must demonstrate that: 1) she belonged to a class protected by the statute; 2) she was qualified for the position; 3) she was subjected to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003) (citing Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (enumerating elements of ADEA prima facie case) and Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (setting forth elements of Title VII prima facie case)).

Claims under both statutes are analyzed under the burden-shifting framework of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). If a plaintiff establishes a prima facie case under either statute, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. See Terry, 336 F.3d at 138; McDonnell Douglas Corp., 411 U.S. at 802 (setting forth burden-shifting analysis under Title VII); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (extending McDonnell Douglas burden-shifting analysis to the ADEA). Should a defendant offer a neutral explanation for its actions, the plaintiff may defeat summary judgment by offering evidence sufficient to show that the proffered neutral explanation was a pretext for discrimination. See Terry, 336 F.3d at 138. The plaintiff bears the ultimate burden of persuasion to demonstrate that the adverse employment action resulted from discrimination. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004).

To establish a prima facie case of unlawful retaliation under Title VII or the ADEA, a plaintiff must demonstrate that "(1) she was engaged in protected activity; (2) the employer was aware of the employee's participation in the protected activity; (3) the employer took action that a reasonable employee would have found materially adverse; and (4) a causal connection existed between the employee's protected activity and the adverse action taken by the employer." Guarino v. St. John Fisher Coll., 321 Fed. Appx. 55, 58 (2d Cir. Apr. 8, 2009) (citing Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-206 (2d Cir. 2006)). The McDonnell Douglas burden-shifting analysis governing employment discrimination claims also applies to retaliation claims. See Terry, 336 F.3d at 140-41 (citing cases).

### B. Plaintiff's Concessions

Defendants contend that "[t]he only issue on this motion is whether plaintiff was denied a transfer from the night shift to either the day or evening shift based on her sex." (Def. 56.1 Stmt. ¶ I.3.) Defendants argue that Plaintiff has "conceded that other actions, including her termination, were not the result of discrimination." (Id.) In support, Defendants offer excerpts from Braithwaite's deposition testimony, in which she concedes that: (1) her termination was not related to her race, national origin, sex, or age; (2) she never complained of race, national origin, gender, or age discrimination while working at Kingsboro, and that she does not believe she suffered retaliation in connection to any of those characteristics; and (3) her only evidence that she was denied a shift transfer on the basis of race, national origin, sex, or age is that the persons ultimately appointed to the positions differed from her with respect to these characteristics, and that Judith Okoli informed her "they needed a male" for the open positions. (Braithwaite Dep. 55-56, 105-06, 140.) Further, Plaintiff testified that the only remedy she is seeking in this litigation is reinstatement to her job at Kingsboro, because it offers a more convenient commute than her current position.[4] (Braithwaite Dep. 54-55.) Plaintiff's Opposition nonetheless reasserts that she "was discriminated against due to [her] Sex, Race, National Origin, Age, and Retaliation, because [she] observed that the patients was [sic] overdosing on their medication."[5] (Pl. Opp. 1.)

Defendants' characterization of Plaintiff's deposition testimony is not entirely accurate. First, Plaintiff's testimony did not necessarily "concede" her claims of race, national origin, and

---

[4] It appears from the limited references in the transcript that Plaintiff was employed by the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") at the time of her deposition.

[5] Defendants argue that Plaintiff's Opposition should be disregarded because it is in the form of an unsworn letter to the court, and contains conclusory allegations without evidentiary support. (See Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Reply") (Docket Entry #38) 1-2.) The court has reviewed Plaintiff's Opposition and the attached documents, and has considered the arguments and admissible evidence contained therein.

9

age discrimination regarding the denial of her shift transfer requests. The court considers these claims, together with Plaintiff's claim of sex discrimination, below. See Section III.C. infra.

Second, while Plaintiff has conceded that her claims of retaliation and termination did not relate to her race, national origin, sex, or age, Plaintiff affirmatively maintained that she was fired in retaliation for reporting concerns about patient medication to her superiors. (See Braithwaite Dep. 105.) At Plaintiff's deposition, the following exchange took place regarding Plaintiff's termination:

> Q: Do you think this issue with the medication is why you were fired from Kingsboro[]?
> A. Exactly.
> Q: Is that the only reason?
> A: Yeah.

(Braithwaite Dep. 67-68.) This allegation does not present a claim under Title VII or the ADEA. There is no evidence that Plaintiff engaged in a protected activity giving rise to a retaliation claim under Title VII or the ADEA. (See Braithwaite Dep. 105-06.) To the extent Plaintiff purported to raise a claim of retaliatory termination based upon Title VII or the ADEA, the court agrees that summary judgment is appropriate because there is no evidence in the record to raise an issue of fact regarding that claim.

However, the court finds that to the extent Plaintiff's retaliatory termination claim is based upon her reporting of patient medication concerns during her tenure as a state employee, she has raised a claim outside the discrimination context. While the Complaint only invokes Title VII and the ADEA, the court is under an obligation to interpret Plaintiff's pleadings liberally, and to raise the strongest arguments that they suggest. See Vanhorne, 273 F. Supp. 2d at 213; Triestman, 470 F.3d at 474. The court interprets Plaintiff's allegation that she was terminated because she reported concerns about patient care to raise a claim for First Amendment retaliation under 42 U.S.C. § 1983. See Scheiner v. New York City Health &

Hospitals, 152 F. Supp. 2d 487, 494-96, 502-503 (S.D.N.Y. 2001) (First Amendment retaliation claim where doctor criticized hospital policy and conditions); see also Warren v. Goord, 81 Fed. Appx. 400, 401 (2d Cir. Dec. 2, 2003) (summary order) (interpreting pro se complaint to raise First Amendment retaliation claim).

To state a claim for First Amendment retaliation, a public employee must demonstrate that "(1) his [or her] speech addressed a matter of public concern, (2) he [or she] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action so that it can be said that [plaintiff's] speech was a motivating factor in the determination." Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003) (internal citations omitted). Reading Plaintiff's complaint liberally, the court concludes that Plaintiff's allegations that she observed "overdosing" and "undocumented and discontinued medication" among the patients and that she was "harassed" after internally reporting these problems, combined with her broader allegation of wrongful termination, are sufficient to raise a First Amendment retaliation claim. (Compl. ¶ 8); see Barclay v. Michalsky, 451 F. Supp. 2d 386, 396-97 (D. Conn. 2006) (holding that where nurse at a state institution complained internally about "the treatment of psychiatric patients at a state facility and the systems and policies in place to ensure those patients receive proper treatment and adequate care," her speech addressed matters of public concern and stated prima facie case of First Amendment retaliation).

This claim was not addressed by Defendants' Motion; therefore, the court does not consider summary judgment for this claim. Defendants may file a supplemental motion addressing this open issue upon application to the court.

### C. Denial of Shift Transfer

To present a prima facie case of employment discrimination under Title VII or the ADEA, Plaintiff must demonstrate that she was subjected to an adverse employment action. (See Section III.A. supra.) An "adverse employment action" is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). As a threshold matter, the court considers whether Kingsboro's denial of a shift transfer to Plaintiff could constitute an adverse employment action.

The Second Circuit has held that a denial of a transfer does not constitute an adverse employment action unless a plaintiff can offer "objective indicia that the transfer denial created a materially significant disadvantage" in her working conditions. Bever v. County of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) (internal citation omitted). An employee's "subjective, personal disappointment" is insufficient. Id. (internal citation omitted); see Williams v. R.H. Donnelly Corp., 368 F.3d 123, 128 (2d Cir. 2004) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or the receipt of the transfer an adverse employment action.") (internal citation omitted). Here, Plaintiff has not presented any evidence to suggest that the denial of the requested transfers materially disadvantaged her; in fact, Plaintiff earned substantially more income to compensate her for the inconvenience of working the night shift. (Def. 56.1 Stmt. ¶ II.9; Jorawar Decl. ¶ 7.) The undisputed facts demonstrate that Kingsboro's denial of the shift transfer requests did not constitute an adverse action for the purposes of Title VII or the ADEA. See Williams, 368 F.3d at 128 ("an employer's denial of a transfer request that would have resulted in a reduction in pay

... without more, does not constitute an adverse employment action"); Antonmarchi v. Consol. Edison Co., No. 03-cv-7735(LTS)(KNF), 2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008) (holding that assignment to permanent night shifts and denial of shift transfers could not constitute adverse action for Title VII purposes); see also Johnson v. Eastchester Union Free Sch. Dist., 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002) (transfer to working less convenient hours does not amount to adverse action).

Even if the denial of a shift change could be deemed an adverse employment action, Defendants have presented evidence of a legitimate, non-discriminatory reason for the denial: Plaintiff's deficient performance. (Def. 56.1 Stmt. ¶ II.12; Jorawar Decl. ¶ 10; Okoli Decl. ¶ 7.) Recurring concerns about Plaintiff's performance were well-documented throughout Plaintiff's limited tenure at Kingsboro. (Def. 56.1 Stmt. ¶ II.15; Greenidge Decl. ¶¶ 9-10 & Exs. A-B.) In addition, Plaintiff had not accrued any significant amount of seniority status, another factor considered by OMH in shift assignments. (See Def. 56.1 Stmt. ¶¶ I.2, II.4; Jorawar Decl. ¶ 3 (demonstrating that Plaintiff had only worked for OMH for about two months at the time of her request); see also CSEA Agreement, Section 44.2 (Jorawar Decl. Ex. C) (setting forth policy).)

Plaintiff has failed to present evidence that could rebut Defendants' proffered explanation. Plaintiff presents no evidence of race, national origin, or age discrimination, beyond her observation that the persons ultimately awarded the open positions were a white male and a Hispanic male who were younger than she. (See Braithwaite Dep. 56.) In support of her sex discrimination claim, Plaintiff asserts that Okoli told her "they needed a male" for the open positions. (Id. at 55.) Okoli denies making this statement to Plaintiff. (Okoli Decl. ¶ 6.) The court finds that, even viewing the facts in the light most favorable to the Plaintiff, this dispute fails to raise a genuine issue of fact in support of Plaintiff's claims. Okoli was just one of the

decision-makers amid of group of officials that denied Plaintiff's transfer request. (See Okoli Decl. ¶ 7 (stating that Greenidge, Okoli, and Wells made the decision together, in consultation with Human Resources).) Nothing else in the record supports Plaintiff's claim that the decision to deny her a shift transfer was discriminatory. Plaintiff's allegation of this lone comment is insufficient to create an issue of fact that could overcome the evidence supporting Kingsboro's non-discriminatory reasons why the transfer was denied.

Summary judgment is granted to Defendants on Plaintiff's claims of race, national origin, sex, and age discrimination with respect to the denial of the shift transfer.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is granted with respect to Plaintiff's Title VII and ADEA claims. The court interprets Plaintiff's Complaint to raise a claim of First Amendment retaliation that was not addressed by Defendants' Motion. Defendants may file a supplemental motion addressing the merits of this claim upon application to the court.

SO ORDERED.

Dated: Brooklyn, New York
August 17, 2009

NICHOLAS G. GARAUFIS
United States District Judge